UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| DAVID JASON TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:21-cv-00127-TWP-DML |
| ) | |
| FLOYD COUNTY SHERIFF, Individual and ) | |
| Official Capacity, ) | |
| KINDERMAN, Sgt., Individual and Official ) | |
| Capacities, ) | |
| ROY, Nurse Practitioner, Medical Staff, ) | |
| Individual and Official Capacities, and ) | |
| KELLEY JOHNSON, Nurse, Medical Staff ) | |
| Individual and Official Capacities, ) | |
| ) | |
| Defendants. ) | |

## ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PRELIMINARY INJUNCTION

This matter is before the Court on a Motion for Preliminary Injunction filed by *pro se* Plaintiff David Jason Taylor ("Mr. Taylor") against the Floyd County Sheriff, Sgt. Scott Kinderman, Nurse Practitioner Roy Washington ("NP Washington"), and Nurse Kelley Johnson ("Nurse Johnson") (collectively, the "Defendants") (Dkt. 42). This action is based in part on Mr. Taylor's allegations that he has been deprived of reasonable medical treatment while detained at the Floyd County Jail (the "Jail"). Mr. Taylor seeks immediate attention for several medical concerns, including swelling in his left arm and leg, to the extent his hand turns purple. Dkt. 42 at 2. Mr. Taylor asks "to be seen by a doctor qualified to diagnose" his conditions and "a CT scan." *Id.* For the reasons discussed below, the Motion is **granted in part and denied in part**.

## I.  BACKGROUND

Mr. Taylor filed his Complaint in August 2021. (Dkt. 1.) When the Court screened Mr. Taylor's Complaint in January 2022, it summarized his allegations as follows:

> Mr. Taylor is afflicted by chronic medical conditions, including heart trouble and a history of blood clots. When he arrived at the Jail in April 2021, he also reported a problem with one of his teeth.
>
> Mr. Taylor's tooth became infected, and he was not provided with enough antibiotics. Eventually, the tooth was pulled, but he was not provided antibiotics before or after the procedure. He believes that the infection entered his bloodstream and is causing him additional problems.
>
> Since his tooth was removed, Mr. Taylor has experienced "little puss bumps" on his neck, a "golf ball size lump" on his left shoulder blade, swelling in his left arm and leg, chest pains, another lump on his left shoulder "about the size of an egg," difficulty breathing, elevated pulse, and heart palpitations. *See* dkt. 1 at 7–11. These conditions have not been properly treated, and he has not received medication promptly when experiencing chest pains. Nurse Practitioner Roy and Nurse Kelley Johnson know about these conditions and have ignored them.

(Dkt. 12 at 2.)

On July 18, 2022, Mr. Taylor filed a Motion for Immediate Injunctive Relief in which he sought immediate attention for several medical concerns, including elevated blood pressure, severe pains in his left side, and swelling in his left arm and leg, to the extent his hand turns purple. (Dkt. 42 at 2.) Mr. Taylor asks "to be seen by a doctor qualified to diagnose" his conditions and "a CT scan." *Id.*

The Defendants responded in two parts. On July 28, 2022 the Defendants provided a complete review of Mr. Taylor's medical treatment since arriving at the Jail in April 2021, including 489 pages of medical records. (Dkt. 47 *et seq.*) On August 10, 2022, the Defendants supplemented their response with evidence from medical examinations in late July and early August 2022. (Dkts. 53, 53-1.)

After requesting additional time, Mr. Taylor replied on September 12, 2022. (Dkt. 58.) Mr. Taylor noted that he continues to suffer from the same symptoms described in his motion for preliminary injunction, including swelling in his left arm and leg, abdominal pain, elevated blood pressure, and his left hand turning purple. Mr. Taylor also noted additional symptoms that he did not specify in his original motion for preliminary injunction but that were noted in his complaint or in the medical records. These include the lumps that have formed on his back and shoulder and a swollen right testicle. (Dkt. 58 at 2.)

## II. PRELIMINARY INJUNCTION STANDARD

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). The plaintiff first must show that "(1) without this relief, it will suffer irreparable harm; (2) traditional legal remedies would be inadequate; and (3) it has some likelihood of prevailing on the merits of its claims." *Speech First, Inc. v. Killen*, 968 F.3d 628, 637 (7th Cir. 2020). If the plaintiff meets these threshold requirements, "the court then must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Id.*

"A movant's showing of likelihood of success on the merits must be strong." *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020) (quotation marks omitted). A "better than negligible" likelihood of success is not enough. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762−63 (7th Cir. 2020). The precise likelihood of success required depends in part on the balance of harms: "the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020).

Under the Prison Litigation Reform Act, "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

### III.  DISCUSSION

As a pretrial detainee, Mr. Taylor's medical care claims are properly analyzed under the objective unreasonableness standard of the Fourteenth Amendment. *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). "[T]he controlling inquiry for assessing a due process challenge to a pretrial detainee's medical care proceeds in two steps." *McCann v. Ogle Cnty.*, 909 F.3d 881, 886 (7th Cir. 2018). The first step "asks whether the defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of" the plaintiff's conditions. *Id.* (cleaned up). Negligence or even gross negligence is not enough. *Id.* In the second step, the Court focuses "on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief by the individual—whether the response was reasonable." *Id.*

Mr. Taylor's motion for preliminary injunction presents three challenges. First, Mr. Taylor seeks specialized treatment for several medical conditions—conditions that are not obviously connected to one another and might require referrals to multiple specialists. Second, the record is massive, including medical records spanning nearly 18 months. Third, Mr. Taylor's medical condition—and therefore any need for preliminary injunctive relief—is dynamic. His condition and treatment in 2021 might inform his need for urgent care in October 2022, but they are not dispositive, and his needs may change again before this matter concludes.

4

With these facts in mind, the Court addresses Mr. Taylor's pleas for preliminary injunctive relief in three categories: heart conditions and blood pressure; lumps on his skin; and pain, swelling, and redness in his limbs, abdomen, and testicle.

### A. Heart Conditions and Blood Pressure

Mr. Taylor's history of serious heart conditions includes high blood pressure, coronary artery disease, blood clots, and chronic obstructive pulmonary disorder. (Dkt. 47-1 at 18–19; Dkt. 47-2 at 16.) In November 2021, while Mr. Taylor was an inmate at the Jail, he visited a cardiologist following prolonged complaints of chest pain and palpitations. (Dkt. 47-1 at 13.) In the preceding six months, he underwent a catheterization, a stress test, and a CT scan. *Id.* at 16–17, 20–21. The cardiologist directed that Mr. Taylor wear an echocardiogram monitor for two weeks. *Id.* at 15. He also ordered a CT scan, which was performed on January 26, 2022. (Dkt. 47-2 at 14–16.)

After reviewing the results in March 2022, the cardiologist stated that Mr. Taylor should return in one year. (Dkt. 47-8 at 30.) If Mr. Taylor experienced "non cardiac chest pain" before then, he was to alert his primary care physician. *Id.* Finally, the cardiologist directed that Mr. Taylor be placed on a 100 milligram daily dosage of metoprolol. *Id.* However, Mr. Taylor's medical records indicate that he objected to the increased dosage, and the medical staff at the Jail discontinued it on March 27, 2022. (Dkt. 47-2 at 9.) Mr. Taylor's treatment records from the Jail after March 2022 do not indicate that he raised concerns about the heart or blood pressure problems raised in his motion for preliminary injunction or his reply. (*See* Dkt. 47-7 at 79–84, 86–88; Dkt. 47-8 at 9–12, 23–28, 44–45; Dkt. 53-1 at 4–8.)

Mr. Taylor has not shown that he is likely to prevail in demonstrating that the Jail staff's current treatment of his heart conditions and blood pressure are unreasonable or that he is likely to

suffer irreparable harm without referral to a cardiologist. Indeed, Mr. Taylor is already under the care of a cardiologist who has examined him and reviewed multiple tests in the last year. That cardiologist found that Mr. Taylor did not need to return until March 2023, and the Court does not read Mr. Taylor's submissions as reporting that he is suffering any new cardiac symptoms since the cardiologist issued that direction. Finally, Mr. Taylor's rejection of the cardiologist's prescribed medication weighs against finding a likelihood of irreparable harm and favors the Defendants on the balance-of-harms analysis. As the Defendants note, arranging and transporting inmates for outside medical appointments taxes Jail resources. The Court cannot find that the benefit of ordering additional cardiac care outweighs those burdens given that (a) Mr. Taylor is already receiving specialized cardiac care, and (b) it is not clear he will accept and follow through on the specialist's treatment plan. The Motion for preliminary injunction is therefore **denied** to the extent it seeks additional specialized treatment for cardiac symptoms.

**B.      Skin Condition**

NP Washington examined Mr. Taylor on June 14, 2021, and observed a "soft, non-tender" mass on his left shoulder or upper back. (Dkt. 47-3 at 18.) NP Washington believed the mass was a lipoma, and he noted that Mr. Taylor displayed no neurological symptoms to indicate that the mass was either the source or symptom of an infection. *Id*. NP Washington echoed that diagnosis in August 2021. *Id.* at 34.

"A lipoma is a round or oval-shaped lump of tissue that grows just beneath the skin." Cleveland Clinic, *Lipoma: What Is It, Causes, Symptoms, Types, Treatment*, https://my.clevelandclinic.org/health/diseases/15008-lipomas (last visited Oct. 4, 2022). Lipomas are "most common on the back, trunk (torso), arms, shoulders and neck." *Id*. They are benign, and most "don't need treatment." *Id.*

Mr. Taylor continued to express concerns about bumps and masses in that area over the course of the next year. On August 8, 2022, NP Washington examined Mr. Taylor again and reiterated his impression that the masses were lipomas. (Dkt. 53-1 at 8.)

Mr. Taylor's motion for preliminary injunction and reply express concern that his skin condition has continued for over a year without being diagnosed. But he is incorrect: NP Washington has examined the condition multiple times and diagnosed lipomas that are not in need of imminent treatment. It is understandable that Mr. Taylor finds these mysterious masses on his skin unsettling and worries they are not harmless lipomas. However, the Fourteenth Amendment entitles him only to objectively reasonable medical treatment—not to receive a second opinion on demand.

A licensed medical professional has examined Mr. Taylor more than once and determined that his skin condition is nothing more than benign lipomas. Mr. Taylor has not provided any medical evidence suggesting that the condition is likely to be something else or that declining to treat the condition differently places him at an unreasonable risk of harm. As such, the Court cannot find at this stage that Mr. Taylor is likely to prevail on the merits of a claim regarding his skin condition or that declining to offer preliminary injunctive relief will subject him to irreparable harm. Mr. Taylor's Motion for preliminary injunction is **denied** to the extent it seeks specialized treatment for his skin condition.

C.  **Pain, Swelling, and Redness in Limbs, Abdomen and Testicle**

A member of the medical staff first observed that Mr. Taylor's left arm was "slightly red" in May 2021. (Dkt. 47-3 at 15.) Two months later, Mr. Taylor complained of numbness and tingling in his left arm, and a nurse described his left hand as "slightly discolored." *Id.* at 29. In September 2021, Nurse Johnson described Mr. Taylor's hand as "purplish" and noted that he

7

complained of sharp pains down his arm and leg. *Id.* at 45. Nurse Marlena Beacraft ("Nurse Beacraft") observed "non pitting edema" in Mr. Taylor's left arm and hand on December 18, 2021. (Dkt. 47-1 at 69.) In April 2022, Nurse Beacraft observed swelling in Mr. Taylor's lower back and right testicle. (Dkt. 47-8 at 25.) In May, Nurse Smith noted Mr. Taylor complained of abdominal pain lasting two days. *Id.* at 23. In early July 2022, she observed that the swelling in Mr. Taylor's arm was "unchanged," and he continued to complain of pain and numbness. *Id.* at 9. Later in July, Nurse Beacraft described Mr. Taylor's entire left arm as "pinkish/purple" and "warm," and she noted Mr. Taylor's complaints of sharp pains in his abdomen, arm, and leg. *Id.* at 44.

The Court has not located any documentation in Mr. Taylor's medical records that NP Washington had acknowledged or considered the swelling and discoloration in Mr. Taylor's arm and hand. NP Washington states in an affidavit dated August 10, 2022, that he "noted no swelling or redness in Mr. Taylor's arms during" an examination on August 8, 2022. *See* Dkt. 53-3 at ¶ 2. The significance of this statement, however, is mitigated by the fact that it does not appear in NP Washington's notes from the examination. In other words, nothing in NP Washington's treatment notes suggests that he ever considered Mr. Taylor's prolonged swelling and redness during that examination. (Dkt. 53-1 at 7.)

On an Eighth Amendment claim—where plaintiffs face a heightened legal standard—a prison official violates an inmate's rights by acting "with deliberate indifference to a prisoner's serious medical condition." *Perry v. Sims*, 990 F.3d 505, 511 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "A medical condition is serious if it 'has been diagnosed by a physician as mandating treatment' or 'is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Id.* (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). For a period of at least several months, Mr. Taylor had reported pain and numbness in his left arm

and leg, and nurses have consistently observed that the arm and hand were swollen, purple, and, in at least one instance, warm to the touch. These symptoms would sound alarm bells in the mind of a lay person. Yet, it appears that neither NP Washington nor any physician has ever examined or investigated these symptoms in Mr. Taylor.

Mr. Taylor appears well positioned to demonstrate that the Defendants disregarded a medical condition that obviously required attention, or that their approach to his condition did not reflect an exercise of medical judgment, or that they persisted in a course of treatment (or non-treatment) that proved ineffective. *See Petties v. Carter*, 836 F.3d 722, 728–30 (7th Cir. 2016) (examples of deliberate indifference). Therefore, he necessarily has a substantial likelihood of demonstrating that the Defendants' approach to the swelling and redness in his left extremities was objectively unreasonable. Given that his symptoms suggest a need for urgent medical attention, he has also shown a risk of irreparable harm justifying a narrow preliminary injunction.

The Defendants respond that this condition does not require referral to an outside doctor because "Mr. Taylor has already seen a cardiologist and it has been confirmed that Mr. Taylor's cardiology condition is stable at this time." (Dkt. 47 at 29.) But the Defendants cite no evidence that the swelling, numbness, and redness in his extremities are cardiac in nature—much less that the cardiologist considered them and determined them non-emergent. The Defendants also argue that Judge Magnus-Stinson found in the course of Mr. Taylor's criminal case that he was "receiving adequate medical care" at the Jail, so Mr. Taylor has no likelihood of success on the merits. But Judge Magnus-Stinson issued that ruling four months ago, and it does not specifically address the pain, numbness, swelling, and redness in Mr. Taylor's arm and leg. Accordingly, the Motion for preliminary injunction is **granted** to the limited extent discussed below.

9

The same analysis does not apply to Mr. Taylor's complaints of testicular swelling and abdominal pain. Mr. Taylor's medical records indicate that he raised these issues once or twice over the span of more than a year. The same volume of evidence does not support a finding that the Defendants have responded unreasonably to those complaints or that he faces irreparable harm if the Court does not direct that he be examined by a urologist or gastroenterologist. Therefore, the Motion for preliminary injunction is **denied** with respect to these symptoms.

## IV. CONCLUSION

Mr. Taylor's Motion for Immediate (Preliminary) Injunctive Relief, Dkt. [42], is **GRANTED to the limited extent** that the Court **orders** Defendant Roy Washington to file **one** of the following by **no later than Friday, October 14, 2022**:

(a) a notice that NP Washington has examined Mr. Taylor with particular attention to the ongoing pain, numbness, swelling, and redness in his left arm and leg. This notice must state NP Washington's diagnosis and plan for treating the condition.

(b) a notice confirming that NP Washington has identified an appropriate physician to assess and treat the ongoing pain, numbness, swelling, and redness in Mr. Taylor's left arm and leg; that an appointment has been scheduled; and that he will implement any recommendations from that physician.

This preliminary injunction extends no farther than necessary to correct the harm requiring preliminary injunctive relief—namely, that Mr. Taylor's swollen, discolored limbs require thoughtful attention from a medical professional. The injunction is also narrowly tailored in that it allows NP Washington to satisfy its requirements without referral to a specialist, and the burden of an additional appointment with a patient NP Washington sees regularly should be slight. *See* 18U.S.C. § 3626(a)(2).

The Motion for Immediate Injunctive Relief is **DENIED** in all other respects.

Consistent with the Seventh Circuit's holding in *MillerCoors LLC v. Anheuser-Busch Companies, LLC*, 940 F.3d 922, 923 (7th Cir. 2019), this injunction will be set forth in a separate

order without reference to any other document. *Id.* at 926 (described as a separate-document requirement by dissent).

**SO ORDERED.**

Date: 10/7/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

David Jason Taylor
FLOYD COUNTY JAIL
Inmate Mail/Parcels
P.O. Box 1406
New Albany, Indiana 47150

Carol A. Dillon
BLEEKE DILLON CRANDALL, P.C.
carol@bleekedilloncrandall.com

Christopher Andrew Farrington
BLEEKE DILLON CRANDALL ATTORNEYS
drew@bleekedilloncrandall.com

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP (New Albany)
jlowe@k-glaw.com

Christine Clark Sims
KIGHTLINGER & GRAY LLP
csims@k-glaw.com